## UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FORMTEC, LLC and | ) |
| TOMAHAWK MANUFACTURING, INC., | ) |
| | ) CASE NO.: |
| Plaintiffs, | ) |
| | ) |
| vs. | ) **JURY TRIAL DEMANDED** |
| | ) |
| MICHAEL J. MORRIS and BENNETT | ) |
| HARTMAN LLP a/k/a BENNETT, | ) |
| HARTMAN, MORRIS & KAPLAN LLP, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiffs Formtec, LLC ("Formtec") and Tomahawk Manufacturing, Inc. ("Tomahawk")

(Formtec and Tomahawk are, collectively, "Plaintiffs"), by and through their undersigned counsel,

as and for their Verified Complaint against Defendants Michael J. Morris ("Morris") and Bennett

Hartman LLP, a/k/a Bennett, Hartman, Morris & Kaplan LLP (the "BH Firm") (collectively,

"Defendants"), respectfully allege as follows:

## PARTIES

1.      Plaintiff Formtec is a Wisconsin limited liability company authorized to do

business in the State of Illinois, with its principal place of business at 1204 Pilgrim Road,

Plymouth, Wisconsin 53073.

2.      Plaintiff Tomahawk is a Wisconsin corporation authorized to do business in the

State of Illinois, with its principal place of business at 1204 Pilgrim Road, Plymouth, Wisconsin

53073.

3.      Upon information and belief, Defendant Morris is a natural person with a place of

business at 210 SW Morrison Street, Portland, Oregon 97204.

1

4.      Upon information and belief, Defendant BH Firm is a law firm and Oregon limited liability partnership, with a place of business at 210 SW Morrison Street, Portland, Oregon 97204.

5.      Upon information and belief, at all relevant times, Defendant Morris was and is an attorney and partner with Defendant BH Firm.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

7.      Jurisdiction is proper in Illinois because acts complained of herein took place in the State of Illinois.

## FACTS COMMON TO ALL COUNTS

### James B. Wolff Assigns All Patents and Patent Applications to Formtec

8.      Non-party James B. Wolff ("Wolff") developed the concept of using "fiber-orientation technology" ("FOT") and sphere-into-cylinder technology ("Venturi Technology") in meat processing equipment and for other applications outside the meat processing industry.

9.      Tomahawk manufactures meat forming and processing equipment and is owned by Robert Tournour ("Tournour").

10.     In November 2010, Wolff approached Tournour to discuss potential use of FOT and Venturi Technology and to form a business relationship with Tomahawk based on the concepts.

11.     Following the November 2010 meeting, Wolff and Tomahawk executed a Non-Disclosure Agreement ("NDA"), and Tomahawk began reviewing and testing the use of the FOT and Venturi Technology in meat forming and processing equipment.

2

12.     On November 29, 2011, Tournour formed Formtec for the purpose of trying to commercialize the FOT and Venturi Technology.

13.     Tomahawk and Formtec are affiliated companies owned by Tournour.

14.     In 2011, Wolff formed Spherical IP, LLC ("Spherical IP"), a closely-held entity through which he would work with Formtec with respect to the FOT and Venturi Technology.

15.     On December 20, 2011, Spherical IP and Formtec entered into an NDA to protect the confidentiality of the FOT and Venturi Technology.

16.     On September 11, 2012, Formtec and Spherical IP entered into an agreement to govern their rights to the FOT and Venturi Technology (the "FOT Agreement"), to wit, concerning ██████████████████████████████████████████████████████

17.     The FOT Agreement reflects the parties' allocation of rights and responsibilities in connection with the ownership and exploitation of the FOT and Venturi Technology.

18.     As will be discussed in detail herein, by Arbitration Awards dated November 16, 2022 and April 7, 2023, a three-member AAA Arbitration Panel (the "Panel") resolved a dispute between Formtec and Spherical IP under the FOT Agreement.

19.     Among other determinations of the Panel in those Arbitration Awards, the Panel held that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ 11/16/22 Interim Award of Arbitrators, at p. 3 (the "Interim Award").

20.     The Interim Award was incorporated in its entirety in a Final Award of Arbitrators dated April 7, 2023 (the "Final Award").

21.     Pursuant to the FOT Agreement, ███████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████

22.     In addition to use in meat processing equipment, Tomahawk and Formtec explored other ways to commercialize the Venturi Technology, such as in ███████████████████

█████████████

23.     Pursuant to the FOT Agreement, Formtec filed and prosecuted patent applications in the United States Patent and Trademark Office ("PTO") claiming inventions using the FOT and/or Venturi Technology, both for the meat industry and outside the meat industry.

24.     The PTO issued a number of patents to assignee Formtec for inventions using the FOT and/or Venturi Technology, and Formtec currently has patent applications pending in the United States PTO and in foreign patent offices for the Venturi Technology.  The aforesaid constitutes Formtec's patent portfolio (the "Patents").

25.     Since the onset of Formtec's relationship with Spherical IP, Formtec has invested a significant amount of money and time to develop the FOT and Venturi Technology, and to protect that technology through obtaining and maintaining Patents and also keeping the information Confidential through the use of non-disclosure agreements ("NDAs").

26.     Pursuant to the FOT Agreement as initially drafted and agreed, ███████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

27.     The FOT Agreement was amended in 2014 stating that ███████████████████

████████████████████████████████████████████

28.     The FOT Agreement remains in full force and effect, as found by the Panel.

**Defendants Represented Spherical IP in Arbitration, and in the Wisconsin Federal Court Arbitration Awards Confirmation Proceeding**

29.     In addition to the contractual relationship under the FOT Agreement, Wolff also worked for Tomahawk from 2012 until Tomahawk terminated his employment on March 25, 2021.

30.     Based on events and information uncovered following the termination, on May 27, 2021, Formtec instituted a AAA Arbitration under the FOT Agreement styled *Formtec, LLC v. Spherical IP, LLC*, Case No. 01-21-0004-0512 (the "Arbitration"), claiming, among other things,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████[1]

31.     At all relevant times, including throughout the duration of the Arbitration, as well as after, Defendants were legal counsel to Spherical IP, and to Wolff individually.

32.     Defendants' conduct complained of herein is primarily, but not exclusively, based on the unanimous findings of the Panel, set forth in their Interim Award and Final Award.

33.     The Interim Award and Final Award followed a four-day evidentiary hearing in July 2022, which was conducted, by agreement, at 150 North Michigan Avenue, Suite 3050, Chicago, Illinois.

34.     The Panel's findings and rulings set forth in their Interim Award and Final Award are based on their full review and consideration of "████████████████████

████████████████████████████████████████████████████████

---

[1] Section 14 of the FOT Agreement, ███████████████████████████████████████

██████████████████████████"



" Interim Award at p. 1.

35.　The Panel found Formtec to be the prevailing party in the Arbitration.

36.　Pursuant to Section 14 of the FOT Agreement, which provides that ██████ ██████████████████████████████████████████████████████, the Panel ██████████████████████████████████████████████. Interim Award at pp. 16-18.

37.　In their Final Award, the Panel awarded Formtec attorney's fees and costs, which, inclusive of interest, totals in excess of $1,600,000.00.

38.　While those damages were awarded against Spherical IP, ████████████ ████████████████████████████████████████████████████████████████ ████████████

39.　The Interim and Final Arbitration Awards were confirmed on September 27, 2023, and are now an entered judgment of the U.S. District Court for the Eastern District of Wisconsin (the "Judgment").

40.　The Arbitration Awards were confirmed over objection of Defendants, whose objections were determined as part of the Judgment to have been waived.

41.　Notwithstanding the waiver, Formtec was nonetheless required to incur substantial attorneys' fees and costs to respond to these objections.

42.　No appeal was taken from the Judgment, and the time within which to do so has expired.

**Defendants Interfered with Formtec's Patent Prosecution**

43.     Pursuant to Section 4 of the FOT Agreement, ████████████████████
███████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████.

44.     In contravention of its contractual obligation in Section 4 of the FOT Agreement,
during the Arbitration, ████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

11/16/22 Interim Award at p. 8.

45.     The Panel further found that ██████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████████████████ Id.

46.     The Panel found that positions taken by Spherical IP in the Arbitration ████████
███████████████████████████████████████████████████████████████████████
█████████████████████████████████████████ and ██████████████████████████
███████████████████████████████████████████████████████████████████████
████████████████████ Id. at 9.

47.     The Panel found:



11/16/22 Interim Award at p. 9.

48.     The Panel found that Formtec had to expend significant fees in the Arbitration for

Spherical IP's ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

4/7/23 Final Award at p. 4.

49.     The Panel found that ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Id.

50.     The Panel stated: ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ 11/16/22 Interim

Award at p. 17.

51.     The Panel recited that "Wis. SCR 20:3.1 provides that, 'In representing a client, a

lawyer shall not:...(2) knowingly advance a factual position unless there is a basis for doing so that

is not frivolous; or (3) file a suit, assert a position, conduct a defense, delay a trial or take other

8

action on behalf of the client when the lawyer knows or when it is obvious that such an action would serve merely to harass or maliciously injure another.'"  4/7/23 Final Award at p. 8.

52.     The Panel further stated that █████████████████████████████████

████████████████████████████████████

> RULE 3.1 MERITORIOUS CLAIMS AND CONTENTIONS In representing a client or the lawyer's own interests, a lawyer shall not knowingly bring or defend a proceeding, assert a position therein, delay a trial or take other action on behalf of a client, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law, except that a lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration may, nevertheless so defend the proceeding as to require that every element of the case be established.... Adopted 01/01/2005." Id.

53.     The Panel rejected any distinction between the litigant and the attorney espousing the litigant's position, finding that ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████ Id. (emphasis added).

54.     The Panel stated that ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████ Id. at 6.

55.     ████████████████████████████████████████

56.     Upon information and belief, Defendants sought to weaponize the Arbitration for collateral purposes unrelated to the Arbitration, to prejudice Plaintiffs.

57.     Formtec's damages include, but are not limited to, Formtec's loss of at least two years of patent licensing and royalties out of a potential twenty years, the time in which a patent expires.

58.     ███████████████████████████████████████████████

███████████████████████████████████████████

59.     Accordingly, Formtec's damages from the loss of these two years of patent licensing and royalties equals at least $10 million.

**Defendants Interfered with Formtec's Business Expectancies with Spherical Industries**

60.     Spherical IP, through Defendants, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████     11/16/22 Interim Award at pp. 3-4.

61.     However, it was <u>Defendants</u> who had in fact interfered with Formtec's business expectancy that Formtec believed it had at the time, over the course of a series of email exchanges between Defendants and Formtec's counsel, Aaron Olejniczak, relating to a contemplated sale of Spherical IP to Spherical Industries and Christopher Duggan ("Duggan"), an owner and the President of Spherical Industries.

62.     In an email dated January 20, 2022, Mr. Olejniczak wrote to Defendant Morris:

> As I told you on the phone last week, Spherical [IP] does not need Formtec's consent to disclose information as long as it has proper protections in place and it complies with the parties' agreements. Here you are representing that NDAs have been put in place [between Respondent and SI]. This additional agreement is not warranted.
>
> *Again, I'm happy to discuss this matter with Spherical Industries' counsel or to set up a call between Spherical Industries and Formtec*

*to explain any of this, as they will need to work with one another in*
*the future.*

63.     Later that same day, Morris sent an email to Duggan, which purported to forward the January 20, 2022 email that he had received from Formtec's counsel to Duggan, but Morris did not do so.  Instead, Morris <u>altered</u> Olejniczak's January 20, 2022 email, by only including the first paragraph thereof and, incredibly, removing the second (italicized) paragraph.

64.     The Panel found that not only was this alteration made █████████████████
████████████████████████████████████████████████████████████████████████

11/16/22 Interim Award at pp. 14-15; 4/7/23 Final Award at pp. 6-7.

65.     The Panel found █████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████ Final Award at p. 7.

66.     The Panel also found that Morris ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████ <u>Id</u>. at p. 6.

67.     The Panel further found:



11

████████████████████████████ (Id. at pp. 6-7 (emphasis added)).

68. Based on the evidence of record, the Panel concluded that ████████████

████████████████████████████

████████████████████████ (11/16/22 Interim Award at p. 14 (emphasis in original)).

69. The Panel found ████████████████████████████

████████████████████████████

████████ 4/7/23 Final Award at p. 6 (emphasis added).

70. Formtec reasonably relied upon the factual representations made by Defendants in these emails and/or that representations being made by Formtec's counsel would be conveyed truthfully and in full by Defendants to Spherical Industries.

12

**The Panel Found that Defendants Engaged In Other Misconduct**

████████

██████████████████████████████████████████████████████

███████████████████████ <u>Id</u>.

72.    Spherical IP's amended counterclaim interposed by Defendants on Spherical IP's

behalf sought ███████████████████████████████████████

██████████████████████████████████████████████████████

████████ <u>Id</u>. at 3.

73.    The Panel ruled that ████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████ <u>Id</u>. at 6.

74.    The Panel found that ███████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████ <u>Id</u>.

75.    As stated above, the Panel found that ██████████████

██████████████████████████████████████████████████████

██████████ <u>Id</u>.

76.    The Panel found that ████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ <u>Id</u>.

77. The Panel found, *inter alia*, other misconduct by Morris, ruling:

a.  (Id. at p. 7 (emphasis added)).

b. (Id. at p. 8 (emphasis added)).

c. (Id. (emphasis added)).

78. The Panel further found that (emphasis added).

79.     The Panel stated that ███████████████████████████████

████████████████████████████████████████████████████████████

████████████     4/7/23 Final Award at p. 9.

80.     However, the Panel found that ██████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████     Id. at pp. 9-10.

**The Panel's Unanimous Findings Concerning Defendant Morris'
Attempts to Disavow His Relationship From Defendant BH Firm**

81.     In an effort to shield the BH Firm from his misconduct described herein, Morris

attempted during the Arbitration to disavow his association with the BH Firm.

82.     Morris' attempts were summarily rejected by the Panel which ruled that:



(4/7/23 Final Award at pp. 5-6
(emphasis added)).

15

**Other Bad Acts of Defendants**

83.     Defendants' bad acts are not limited to the foregoing, however.

84.     Upon information and belief, during the Arbitration, Defendants knew, or had reason to know, that ████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████

85.     Upon information and belief, Defendants knew that ████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████

86.     Further impugning the testimony of Mr. Duggan offered by Defendants, upon information and belief, at the time he testified in the Arbitration, Mr. Duggan was acting pursuant to a belief that he was an agent of Spherical IP and Wolff under the FOT Agreement.

87.     As such, upon information and belief, Defendants knew that ██████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████

88.     In fact, in an action later filed by Formtec and Tomahawk in the U.S. District Court for the District of Nevada against Mr. Duggan and others, Mr. Duggan's counsel filed a motion to be relieved as counsel, noting, as a basis to be relieved, that "pleadings contain statements that are false and that [Mr. Duggan] knew to be false at the time they were filed" and that "Counsel reasonably believes that [Mr. Duggan] likely used Counsel to perpetrate a crime or fraud".

89.     Additionally, upon information and belief, although never disclosed as his counsel, ████████████████████████████████████████████████████████████████████████████
██████████████████

90. Upon information and belief, Defendants additionally provided assistance to Mr. Duggan in filing various actions against Formtec and Tomahawk, which actions were ultimately determined to be without merit and dismissed.

91. Notwithstanding the same, Formtec and Tomahawk were required to incur substantial attorneys' fees and costs to defend against same.

92. After Spherical IP lost the Arbitration, Defendants then sought to reassert their unsuccessful legal theories from the Arbitration in other venues, including in a matter brought by Wolff individually against his former employer Tomahawk, styled *Wolff v. Tomahawk*, 3:21-cv-00880-SI (D. Or. 2021) (the "Oregon Action").

93. Specifically, an issue in the arbitration was ███████████████████ ████████████████████████████████████████████████ ██████████████████████████

94. ████████████████████████████████████████████████ ███████████████████████

95. Despite the foregoing, after the Arbitration, Defendants then sought to relitigate that same precluded position in the Oregon Action, claiming an ownership interest in this.

96. Defendants even filed and sought to rely on a sworn statement of Mr. Duggan in support of seeking an award of summary judgment in the Oregon Action.

97. Upon information and belief, Defendants' legal positions were interposed, *inter alia*, for the purposes of harassing Formtec's affiliate Tomahawk, and/or in an attempt to relitigate finally determined issues that it litigated and lost.

98.     Based on the foregoing, Tomahawk has been exposed to substantial damages in the Oregon Action by Defendants taking legal positions that Defendants knew or had reason to know contradicted the sworn positions taken by Spherical IP and Wolff in the Arbitration.

99.     Additionally, Tomahawk was forced to incur costs in an amount estimated at this time to be in the hundreds of thousands of dollars, including, but not limited to, discovery vendor expenses.

100.    The foregoing acts by Defendants are illustrative in nature and are in addition to other acts that are yet to be uncovered.

101.    Any and all conditions precedent to asserting the following causes of action have either occurred or been waived.

### COUNT I: FRAUD
#### (*Formtec Against All Defendants*)

102.    Formtec hereby restates and re-alleges Paragraphs "1" through "101", as though fully set forth herein.

103.    Defendants misrepresented to Formtec's counsel that they would communicate to Mr. Duggan and Spherical Industries that Formtec was willing to communicate directly with them related to the sale of rights in and to the Patents, based on emails referenced above sent and received on January 20, 2022.

104.    Defendants failed to do so.

105.    Instead, as an example, when he forwarded an email from Formtec's counsel to non-party Mr. Duggan and Spherical Industries, Defendant Morris removed the portion of that email that stated Formtec was willing to speak directly with Duggan and Spherical Industries Inc., and as such, the email contained false statements and/or omissions of material fact.

18

106.     Formtec reasonably and justifiably relied to its detriment on Defendants'
representation that the information was conveyed to Mr. Duggan and Spherical Industries.

107.     Defendants intentionally misled and misinformed Formtec so that Formtec would
not contact Mr. Duggan and Spherical Industries directly.

108.     Formtec could and would have contacted Mr. Duggan and Spherical Industries
directly but for Defendants' misrepresentations.

109.     Defendants asserted a counterclaim in the Arbitration that attributed the failure to
sell their Patents interest to Spherical Industries and Mr. Duggan to Formtec's alleged lack of
cooperation.

110.     Defendants asserted that counterclaim knowing that they themselves were the cause
of the failure to communicate and/or cooperate, with an effort to further mislead and misinform
Formtec.

111.     By way of illustration and not limitation, the Arbitration Panel found, based on
positions taken by Respondent in the Arbitration, including the ███████████ that certain
technology was utilized in products Tomahawk manufactured, that this █████████████
███████████████████████████████████████████████████████████████
███████████████████████████████

112.     As a result of the foregoing, this "███████████████████████████
███████████████████████████████████████████████████"

113.     Formtec was damaged as a result of the foregoing in an amount totaling at least its
attorneys' fees and costs in defending the Arbitration counterclaims.

114.     As a result of the foregoing and additional acts yet to be uncovered, Formtec has
been damaged, and demands judgment against Defendants in an amount to be determined by the

Court upon the trial of this action, but believed at this time to be in excess of $1,600,000.00 (the attorney's fees and costs awarded by the Panel); plus lost royalties and licensing fees for Formtec's delayed Patents because of Defendants' frivolous counterclaims in the Arbitration, believed at this time to be in excess of $10,000,000.00; plus the value of Formtec's interest in its Patents lost from the potential sale of its Patents in an undetermined amount at this time.

### COUNT II: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES (RELATING TO SPHERICAL INDUSTRIES) (*Formtec Against All Defendants*)

115.    Formtec hereby restates and re-alleges Paragraphs "1" through "114", as though fully set forth herein.

116.    Defendants made misrepresentations of fact, including, but not limited to, by altering emails.

117.    These misrepresentations had the effect of interfering with business expectancies between Formtec and Spherical Industries that Formtec reasonably believed it had at the time.

118.    Formtec could and would have contacted Mr. Duggan and Spherical Industries directly but for Defendants' misrepresentations.

119.    Defendants were aware of the prospective business relationship between Formtec and Spherical Industries and engaged in wrongful conduct and/or acted with wrongful means or malicious intent to harm Formtec and purposefully interfere with Formtec's legitimate business expectancy and prevented it from ripening into a valid business relationship.

120.    Therefore, Formtec is entitled to damages resulting from Defendants' misconduct in an amount to be proven at a trial on the merits.

121.    As a result of the foregoing and additional acts yet to be uncovered, Formtec has been damaged, and demands judgment against Defendants in an amount to be determined by the

Court upon the trial of this action, but believed at this time to be in excess of $1,600,000.00 (the attorney's fees and costs awarded by the Panel); plus lost royalties and licensing fees for Formtec's delayed Patents because of Defendants' frivolous counterclaims in the Arbitration, believed at this time to be in excess of $10,000,000.00; plus the value of Formtec's interest in its Patents lost from the potential sale of its Patents in an undetermined amount at this time.

### COUNT III: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS OPPORTUNITIES (RELATING TO PATENT PROSECUTION)
*(Formtec Against All Defendants)*

122.    Formtec hereby restates and re-alleges Paragraphs "1" through "121", as though fully set forth herein.

123.    Defendants interposed a bad faith and frivolous counterclaim in the Arbitration which had the effect of barring Formtec's rights and use of its Patents, a reasonable and legitimate business expectancy of which Defendants were fully aware.

124.    Defendants aided Spherical IP in the foregoing through the counterclaims they interposed in the Arbitration.

125.    Defendants knew and intended this conduct to interfere with Formtec's rights to its patent.

126.    Defendants did not merely act as an advocate, but rather, as the Panel found, Defendants sought to weaponize the Arbitration for collateral purposes unrelated to the Arbitration, to prejudice Formtec.

127.    Defendants engaged in wrongful conduct and/or acted with wrongful means or malicious intent to harm Formtec and purposefully interfere with Formtec's legitimate rights to its Patents, thereby preventing them from ripening into valid business opportunities and advantages for Formtec.

128.     By way of illustration and not limitation, the Arbitration Panel found, based on positions taken by Respondent in the Arbitration, including the ▮▮▮▮▮▮▮▮ that certain technology was utilized in products Tomahawk manufactured, that this ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

129.     As a result of the foregoing, this "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."

130.     This delay has tortiously interfered with Formtec's ability to conduct business relative to the Patents, which includes doing business with various individuals and entities to develop, manufacture, market and sell the Patents and products derived from the Patents.

131.     Damages include but are not limited to Formtec's loss of at least two years of patent royalties and licensing fees out of a potential twenty years, the time in which a patent expires.

132.     Therefore, Formtec is entitled to damages resulting from Defendants' misconduct in an amount to be proven at a trial on the merits.

133.     As a result of the foregoing and additional acts yet to be uncovered, Formtec has been damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed at this time to be in excess of $1,600,000.00 (the attorney's fees and costs awarded by the Panel); plus lost royalties and licensing fees for Formtec's delayed Patents because of Defendants' frivolous counterclaims in the Arbitration, believed at this time to be in excess of $10,000,000.00; plus the value of Formtec's interest in its Patents lost from the potential sale of its Patents in an undetermined amount at this time.

## COUNT IV: MALICIOUS PROSECUTION
### (*Formtec Against All Defendants*)

134.     Formtec hereby restates and re-alleges Paragraphs "1" through "133", as though fully set forth herein.

135.     Defendants, including Defendant Morris, asserted counterclaims in the Arbitration in concert with their clients.

136.     The Counterclaims were dismissed as frivolous and without merit, thus Defendants lacked probable cause to interpose these counterclaims.

137.     Defendants acted with legal malice in interposing counterclaims in the Arbitration which they knew had no legal or factual basis.

138.     By way of illustration and not limitation, the Arbitration Panel found, based on positions taken by Respondent in the Arbitration, including the ███████████ that certain technology was utilized in products Tomahawk manufactured, that this ████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████

139.     As a result of the foregoing, this "████████████████████████████ ████████████████████████████████████████████████████████,"

140.     The Panel also found, *inter alia*, still other misconduct by Defendant Morris:

a.     ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████



(emphasis added)

b. 

(emphasis added)

c. 

(emphasis added)

141.     Formtec has been injured and damaged as a result of having to defend the Counterclaims in the Arbitration.

142.     As a result of the foregoing and additional acts yet to be uncovered, Formtec has been damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed at this time to be in excess of $1,600,000.00 (the attorney's fees and costs awarded by the Panel); plus lost royalties and licensing fees for Formtec's delayed Patents because of Defendants' frivolous counterclaims in the Arbitration, believed at this time to be in excess of $10,000,000.00; plus the value of Formtec's interest in its Patents lost from the potential sale of its Patents in an undetermined amount at this time.  Formtec's damages exceed the attorneys' fees and costs incurred to defend the frivolous counterclaims and therefore constitute "special injury" beyond the ordinary injury that results from any litigation.

## COUNT V: ABUSE OF PROCESS
### (*Formtec Against All Defendants*)

143.    Formtec hereby restates and re-alleges Paragraphs "1" through "142", as though fully set forth herein.

144.    In the Arbitration, Defendants in concert with their clients, interposed counterclaims for a purpose other than to collect money damages.

145.    Those counterclaims were interposed, *inter alia*, for the purposes of attacking the validity of its Patents, such that Formtec would no longer own its Patents.  As such, Defendants prosecuted the counterclaims for an improper ulterior purpose.

146.    As the Arbitration Panel unanimously found, Defendants prosecuted counterclaims in the Arbitration that were without merit.

147.    The Panel also found, *inter alia*, still other misconduct by Defendant Morris:

a.    

(emphasis added)

b.  (emphasis added)

c. ██████████████████████████████████ (emphasis added)

148.    As underscored by the Arbitration Panel, Defendants did not merely act as an advocate, but rather, as the Panel found, Defendants sought to weaponize the Arbitration for collateral purposes unrelated to the Arbitration, to prejudice Formtec.

149.    These included counterclaims against Formtec on the basis of purported conduct by Formtec for which Defendants were actually responsible.

150.    For example, when forwarding an email from Formtec's counsel to non-party Mr. Duggan and Spherical Industries, Defendant Morris removed the portion of that email that stated Formtec was willing to speak directly with Mr. Duggan and Spherical Industries.

151.    By way of illustration and not limitation, the Arbitration Panel found, based on positions taken by Respondent in the Arbitration, including the ██████████ that certain technology was utilized in products Tomahawk manufactured, that this ████████████ ██████████████████████████████████████████████ ████████████████████████████

152.    As a result of the foregoing, this "████████████████████████ █████████████████████████████████████████████████"

153.    This delay has prevented Formtec from conducting business relative to these Patents, which includes doing business with various individuals and entities to develop,

manufacture, market, license and sell the Patents and products derived from the Patents. Therefore, Defendants manipulated the process to accomplish a result beyond the purview of the legal process.

154. Damages include, but are not limited to, Formtec's loss of at least two years of patent royalties out of a potential twenty years, the time in which a patent expires.

155. Formtec is entitled to damages resulting from Defendants' misconduct in an amount to be proven at a trial on the merits.

156. As a result of the foregoing and additional acts yet to be uncovered, Formtec has been damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, but believed at this time to be in excess of $1,600,000.00 (the attorney's fees and costs awarded by the Panel); plus lost royalties and licensing fees for Formtec's delayed Patents because of Defendants' frivolous counterclaims in the Arbitration, believed at this time to be in excess of $10,000,000.00; plus the value of Formtec's interest in its Patents lost from the potential sale of its Patents in an undetermined amount at this time.

## COUNT VI: MALICIOUS PROSECUTION
### (*Tomahawk Against All Defendants*)

157. Tomahawk hereby restates and re-alleges Paragraphs "1" through "156", as though fully set forth herein.

158. Defendants, including Defendant Morris, asserted positions in the Oregon Action that Defendants knew were without merit, to wit, ███████████████████

███████████████████████████████████████

███████████████████

159. Said positions were litigated in the Arbitration and barred by Mr. Wolff's sworn testimony, thus Defendants lacked probable cause to relitigate such positions in the Oregon Action.

160. Defendants acted with legal malice by, among other things, relitigating positions in the Oregon Action which they knew had no legal or factual basis.

161. Those legal positions were interposed, *inter alia*, for the purposes of harassing Formtec's affiliate Tomahawk, and/or in an attempt to relitigate finally determined issues that it litigated and lost.

162. Based on the foregoing, Tomahawk has been exposed to substantial damages in the Oregon Action by Defendants taking legal positions that Defendants knew or had reason to know contradicted the sworn positions taken by Spherical IP and Wolff in the Arbitration.

163. Additionally, and by way of illustration only, Defendants served burdensome discovery demands on Tomahawk in the Oregon Action, based on these previously unsuccessfully litigated positions.

164. In order to respond to that burdensome discovery, among other things, Tomahawk was forced to expend an amount estimated at this time to be at least hundreds of thousands of dollars in responding to those requests, using document vendors to be able to comply with the meritless discovery.

165. Tomahawk has been injured and damaged as a result of having to defend against the foregoing in the Oregon Action.

166. As a result of the foregoing and additional acts yet to be uncovered, Tomahawk has been damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, in an undetermined amount at this time.

## COUNT VII: ABUSE OF PROCESS
### (*Tomahawk Against All Defendants*)

167.    Tomahawk hereby restates and re-alleges Paragraphs "1" through "166", as though fully set forth herein.

168.    Subsequent to the Arbitration that Spherical IP lost, Defendants sought to reassert legal positions they unsuccessfully litigated in the Arbitration in other venues, namely, in the Oregon Action.

169.    Defendants asserted these legal positions for a collateral or ulterior purpose other than to collect money damages.

170.    Those legal positions were interposed, *inter alia*, for the purposes of harassing Formtec's affiliate Tomahawk, and/or in an attempt to relitigate finally determined issues that it litigated and lost.

171.    Based on the foregoing, Tomahawk has been exposed to substantial damages in the Oregon Action by Defendants taking legal positions that Defendants knew or had reason to know contradicted the sworn positions taken by Spherical IP and Wolff in the Arbitration.

172.    Additionally, and by way of illustration only, Defendants served burdensome discovery demands on Tomahawk in the Oregon Action, based on these previously unsuccessfully litigated positions.

173.    In order to respond to that burdensome discovery, among other things, Tomahawk was forced to expend an amount estimated at this time to be at least hundreds of thousands of dollars in responding to those requests, using document vendors to be able to comply with the meritless discovery.

174.    Tomahawk is entitled to damages resulting from Defendants' misconduct in an amount to be proven at a trial on the merits.

175.     As a result of the foregoing and additional acts yet to be uncovered, Tomahawk has been damaged, and demands judgment against Defendants in an amount to be determined by the Court upon the trial of this action, in an undetermined amount at this time.

**WHEREFORE**, Plaintiffs Formtec and Tomahawk respectfully request that this Court enter Judgment against Defendants as to all Counts as follows:

a.  The attorney's fees and costs awarded by the Panel, in the amount of at least $1,600,000.00 inclusive of interest;

b.  The value of Formtec's lost royalties and licensing fees for Formtec's delayed Patents, in an amount believed at this time to be in excess of $10,000,000.00;

c.  The value of Formtec's interest in its Patents lost from the potential sale of any rights to its Patents, in an undetermined amount at this time;

d.  Tomahawk's damages from positions taken by Defendants in the Oregon Action subsequent to the Arbitration, in an undetermined amount at this time;

e.  An award of pre- and post-judgment interest;

f.  Granting Plaintiffs their reasonable attorneys' fees;

g.  Granting Plaintiffs theirs costs and disbursements; and

h.  Granting Plaintiffs such other, further, or different relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand Trial by Jury on all issues so triable.

Dated: January 19, 2024                    Respectfully submitted,


FORMTEC, LLC and
TOMAHAWK MANUFACTURING, INC.


/s/  *Kim R. Walberg*
Kim R. Walberg, Esq.
Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800
Chicago IL 60601
312-527-4000
kwalberg@taftlaw.com

31

## **VERIFICATION**

I, Robert Tournour, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Managing Member of Formtec, LLC and President and CEO of Tomahawk Manufacturing, Inc.; that I am familiar with the matters as set forth in the Verified Complaint; and that under penalty of perjury, the averments in the Verified Complaint are true and correct to the best of my knowledge and belief.

_Robert Tournour_

—————————————————————

Robert Tournour